No. 99-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 43

298 Mont. 344

996 P. 2d 866

TERRA WEST TOWNHOMES, L.L.C.,

Plaintiff, Appellant, and Cross-Respondent,

v.

STU HENKEL REALTY,

Defendant, Respondent, and Cross-Appellant,

DILLON MANAGEMENT AND CONSULTING, INC.

UNITED PACIFIC INSURANCE CO., and BRADLEY

DILLON, ROBERT DILLON, and LEONA DILLON,

individually,

Third-Party Defendants, Appellants, and Cross-Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice Colberg, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

T. Thomas Singer, Moulton, Bellingham, Longo & Mather, P.C.;

Billings, Montana

For Respondent:

Damon D. Obie, Attorney at Law; Billings, Montana

Submitted on Briefs: September 30, 1999

Decided: February 15, 2000

Filed:

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1. Terra West Townhomes, L.L.C., filed suit against Stu Henkel Realty in the Thirteenth Judicial District Court, Yellowstone County. Stu Henkel Realty answered the Complaint, filed a counterclaim against Terra West Townhomes, L.L.C., and initiated a third-party action against Dillon Management and Consulting, Inc., United Pacific Insurance Co., Bradley Dillon, Robert Dillon, and Leona Dillon. The parties subsequently agreed to submit the matter to arbitration. Upon motion by Stu Henkel Realty, the District Court confirmed the arbitration award. Terra West Townhomes, L.L.C., Dillon Management and Consulting, Inc., Bradley Dillon, Robert Dillon, and Leona Dillon appeal from the District Court's decision. Stu Henkel Realty cross-appeals. We affirm.

¶2. The issues presented on appeal are as follows:

¶3. Did the District Court abuse its discretion when it refused to vacate the arbitration award on the basis that the arbitrator had exceeded his powers?

¶4. Did the District Court abuse its discretion when it refused to vacate the arbitration

award on the basis that the arbitrator had disregarded Montana law?

¶One issue is raised in the cross-appeal:

¶5. Did the District Court abuse its discretion when it refused to award Stu Henkel Realty its attorney fees incurred in confirming the arbitration award?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6.In April and May 1995 several investors formed Terra West Townhomes, L.L.C., (Terra West), which started out as a joint venture (Terra West Joint Venture), for the purpose of purchasing, developing, and selling real property located in Billings, Montana. The members of Terra West at formation, along with their respective ownership interests, were as follows:

Dillon Management & Consulting, Inc. 40%

William Ruff 10%

Glenn and/or Lynnae Ehley 30%

Stu Henkel Realty 20%

Bradley Dillon owns a 30 percent interest in Dillon Management and Consulting, Inc., and Robert and Leona Dillon own the other 70 percent jointly.

¶7.Terra West's Operating Agreement called for an initial capital contribution from the members in the amount of $1000 for each 1 percent of ownership, equaling a total capital contribution of $100,000. It appears from the record that the Ehleys and Mr. Ruff were the only members to make their entire capital contributions in cash.

¶8.The contributions of the other participants were represented by complicated transactions which are not necessarily germane to our opinion, but provide some insight into the complexity of the relationships which gave rise to this dispute. Dillon Management and Consulting, Inc.'s contribution was essentially derived from assets procured by its shareholder, Robert Dillon. Dillon purchased the lots for construction of the townhomes from Terra West's predecessor, the Terra West Joint Venture, for $35,000. Robert Dillon also purchased the foundation located on the lots from Stu Henkel

Construction for $30,000 and was given the nonexclusive right to use the existing eight-plex or four-plex plans of Stu Henkel Construction for the site.

¶9.Following these transactions, Stu Henkel received $22,000 of the $30,000 purchase price for the foundation and $8000 was applied to Stu Henkel Realty's capital contribution in Terra West. Twenty percent of the $30,000 purchase price ($6000) for the foundation was also applied to Stu Henkel Realty's capital contribution for a total contribution of $14,000 with the remaining $6000 to be paid from sales commissions.

¶10.Dillon Management and Consulting's $40,000 capital contribution consisted of the contribution of the lots and foundation to Terra West, which were later given a value of $95,000. The additional $30,000 in value attributed to Dillon Management and Consulting's capital contribution stemmed from the value of a potential lien and lawsuit asserted by the Terra West Homeowners' Association for back-owed common expenses.

¶11.In addition, the Operating Agreement designated Dillon Management and Consulting as the operating manager of Terra West. The Operating Agreement specifically identified the duties Dillon Management and Consulting would be required to perform as operating manager of Terra West. The salary of the operating manager was set at 7 percent of Terra West's net profits.

¶12.Terra West hired Stu Henkel Realty as the exclusive real estate agent for the townhomes. The parties entered into a written listing agreement, which provided for Stu Henkel Realty to receive a commission upon the sale of each townhome procured as a result of Stu Henkel Realty's efforts. The parties orally agreed that Stu Henkel Realty would provide on-site supervision of the construction of the townhomes. Stu Henkel Realty asserts that it entered into an oral agreement with Robert Dillon of Dillon Management and Consulting for one-half of Dillon Management and Consulting's salary as operating manager of Terra West. Robert Dillon denies entering into any such agreement with Stu Henkel Realty on behalf of Dillon Management and Consulting.

¶13.The parties also orally agreed that Stu Henkel Realty would receive an additional 1 percent commission on each townhome sold. In its Complaint, Terra West acknowledged the existence of the oral agreement with Stu Henkel Realty for the receipt of an additional 1 percent commission on each townhome sold. Moreover, Stu Henkel Realty received the additional 1 percent commission for each townhome sold during the term of its listing agreement.

¶14.Stu Henkel Realty's exclusive listing agreement with Terra West expired on May 3, 1997, and Terra West elected not to renew the listing agreement with Stu Henkel Realty. At about the same time, Terra West made a call for a special contribution from its members pursuant to the terms of the Operating Agreement. Stu Henkel Realty did not pay the special contribution and instead filed a construction lien in the amount of $71,000 for duties performed while supervising the construction of the project.

¶15.On July 23, 1997, Terra West filed an action against Stu Henkel Realty for breach of contract, slander of title, and to quiet title to the property. Stu Henkel Realty filed an answer, which included numerous affirmative defenses, a counterclaim against Terra West Townhomes, L.L.C., and a third-party action against Dillon Management and Consulting, Inc., United Pacific Insurance Co., Bradley Dillon, Robert Dillon, and Leona Dillon.

¶16.On August 18, 1997, Stu Henkel Realty filed a Lis Pendens with regard to the three remaining townhomes. The following day, Stu Henkel Realty filed a Partial Release of Lis Pendens with regard to one of the townhomes. On October 17, 1997, Terra West filed a motion to expunge the lis pendens. Stu Henkel Realty filed a brief in opposition to Terra West's motion to expunge the lis pendens and filed an Application for Preliminary Injunction concerning Terra West. The District Court conducted a hearing on December 8, 1997, regarding the motion to expunge the lis pendens and the application for a preliminary injunction. At the conclusion of the hearing, the District Court took the matter regarding the lis pendens under advisement and reset the remainder of the hearing for a later date.

¶17.On April 14, 1998, the parties entered into a written agreement to submit the matter to binding arbitration. On April 15, 1998, the parties stipulated to stay the proceedings pending arbitration. Arbitration of the matter occurred on April 14 and 15, 1998. After a review of the documentation, depositions, exhibits, briefs and testimony presented by the parties, the arbitrator made his initial summary findings and award on April 29, 1998.

¶18.On May 18, 1998, Terra West made a request to the arbitrator pursuant to § 27-5-217, MCA (1997), for correction of the arbitration award on the basis that the award contained miscalculations and disregarded Montana law. Stu Henkel Realty opposed the request for correction. On June 5, 1998, the arbitrator conducted a formal hearing regarding Terra West's request for correction. On July 8, 1998, the arbitrator entered an amended award, adjusting the monetary award to Stu Henkel Realty and disposing of all claims.

¶19.Stu Henkel Realty moved the District Court for confirmation of the arbitrator's award on August 20, 1998. Conversely, Terra West, Dillon Management and Consulting, and the Dillons moved the District Court to vacate the arbitrator's award pursuant to § 27-5-312, MCA (1997), on the grounds that the arbitrator had exceeded his powers and had disregarded Montana law.

¶20.Once the matter had been fully briefed by the parties, the District Court conducted a hearing on October 14, 1998, regarding confirmation/vacation of the arbitrator's award. On October 23, 1998, the District Court issued its order granting Stu Henkel Realty's request for confirmation of the arbitration award and denying Terra West, Dillon Management and Consulting, and the Dillons' request for vacation of the award. In its order, the District Court also denied Stu Henkel Realty's request for attorney fees incurred in confirming the award. On October 27, 1998, the District Court entered judgment confirming the arbitrator's award and later amended the judgment on December 7, 1998. The parties appeal and cross-appeal from the District Court's decision.

## STANDARD OF REVIEW

¶21.Judicial review of arbitration awards is limited by statute. *See Nelson v. Livingston Rebuild Ctr., Inc.*, 1999 MT 116, ¶ 11, 981 P.2d 1185, ¶ 11, 56 St.Rep. 486, ¶ 11 (citations omitted). When a matter has been submitted to binding arbitration, courts are not permitted to review the merits of the controversy, but may only confirm, vacate, modify, or correct an arbitration award pursuant to §§ 27-5-311, -312 and -313, MCA. *See* §§ 27-5-311 to -313, MCA (1997); *Nelson*, ¶ 11 (citation omitted). The standard of review for a court's refusal to modify or vacate an arbitration award is whether the court abused its discretion. *See Stockade Enter. v. Ahl* (1995), 273 Mont. 520, 522, 905 P.2d 156, 157 (citations omitted).

## ISSUE 1

¶22.Did the District Court abuse its discretion when it refused to vacate the arbitration award on the basis that the arbitrator had exceeded his powers?

¶23.Terra West, Dillon Management and Consulting, and the Dillons (Appellants) contend that the arbitrator exceeded his powers by making an award in favor of Stu Henkel Realty based on the theory of equitable estoppel, which had not been submitted to the arbitrator. Appellants further contend that the arbitrator had no authority to address claims other than

those presented to him in the Agreement to Arbitrate entered into by the parties. On those grounds, the Appellants have concluded that the arbitration award must be vacated pursuant to § 27-5-312(1)(c), MCA (1997).

¶24. On the other hand, Stu Henkel Realty contends that Montana law allows a judge or arbitrator to consider the equities of the situation when fashioning relief pursuant to the statutes applicable to the judicial dissolution of a limited liability company. Stu Henkel Realty submitted its claim for judicial dissolution of Terra West to the arbitrator. Stu Henkel Realty also asserts that the power of arbitrators is broader than that of the courts in every area of the law and necessarily includes equitable theories.

¶25. In its discussion of the arbitrator's application of the doctrine of equitable estoppel, the District Court noted that principles of equitable estoppel are available to arbitrators. In this regard, the District Court stated that under the circumstances presented in this case the arbitrator was entitled to apply legal principles in reaching a decision based on all of the transactions that occurred between the parties. Upon concluding that the arbitration award should be confirmed, the District Court went on to state that it appears the arbitrator intended the monetary award in favor of Stu Henkel Realty to terminate Stu Henkel Realty's interest in Terra West.

¶26. Section 27-5-312(1)(c), MCA (1997), requires a district court, upon the application of a party, to vacate an arbitration award if the arbitrator exceeded his powers. We have noted previously the following rule with respect to arbitration "excess of powers" cases:

An arbitrator's authority is limited by the bounds of the [arbitration] agreement, and courts may vacate [arbitration] awards that extend beyond the contractual scope of arbitration. An arbitrator exceeds his powers when he decides matters which were not submitted to him.

*Nelson, ¶ 15 (quoting JBC of Wyoming Corp. v. City of Cheyenne (Wyo. 1992), 843 P.2d 1190, 1196 (citations omitted)). Moreover, we have stated that "[i]f the remedy fashioned by the arbitrator has been rationally derived from the [arbitration] agreement it will be upheld on review." Nelson, ¶ 19 (citation omitted).*

¶27. Here, the parties voluntarily entered into an agreement to submit the matter to binding arbitration. The parties agreed that all claims identified in Terra West's complaint and 9 of the 13 claims contained in Stu Henkel Realty's Answer, Counterclaim and Third Party Complaint would be submitted to arbitration. The parties also agreed to use the

Commercial Arbitration Rules of the American Arbitration Association as the applicable rules governing the arbitration.

¶28.After review of the documentation, depositions, exhibits, briefs, and statements of the parties and consideration of all sworn testimony and all admissible evidence presented during the two-day arbitration, the arbitrator rendered his opinion, findings, and award, which were later amended. As the District Court noted, despite the length of the arbitrator's decision it was a summary of his findings and reasoning.

¶29.In reaching his decision, the arbitrator recognized that there were rights which arose by virtue of the facts and circumstances surrounding the transactions between the parties and that some of these rights had arisen by virtue of an oral agreement which would ordinarily not be enforceable without a writing. Thus, the arbitrator turned to the doctrine of equitable estoppel to enforce the oral agreement and recast the capital contributions in making his award.

¶30.As the District Court correctly observed:

Principles of equitable estoppel are clearly available to arbitrators. Indeed, the power of arbitrators concerning every body of law is broader than the power of courts concerning those same bodies of law.

*Public Serv. Co. of Colorado v. International Bhd. of Elec. Workers (10th Cir. 1990), 902 F.2d 19, 20. Among the claims raised by Stu Henkel Realty was a claim for breach of contract and a claim for quantum meruit with regard to services provided pursuant to an oral agreement between Stu Henkel Realty and Dillon Management and Consulting for one-half of the operating manager's salary. Thus, it cannot be said that the arbitrator exceeded his powers by utilizing the doctrine of equitable estoppel to enforce the oral agreement between Stu Henkel Realty and Dillon Management and Consulting for one-half of the operating manager's salary. The arbitrator was presented with a number of complex claims in this case, all of which were considered in rendering his final decision. Therefore, we conclude that the District Court did not abuse its discretion when it refused to vacate the arbitration award on the basis that the arbitrator had exceeded his powers.*

## ISSUE 2

¶31.Did the District Court abuse its discretion when it refused to vacate the arbitration award on the basis that the arbitrator had disregarded Montana law?

¶32.The Appellants contend that the arbitrator disregarded clear Montana law concerning

the statute of frauds and the parol evidence rule, which requires that the arbitration award be vacated. Stu Henkel Realty responded by alleging, *inter alia*, manifest disregard of the law requires something more than a mere disagreement with the law applied by the arbitrator.

¶33.After recognizing that this Court had created a manifest disregard of law standard for review of an arbitration award and that arbitration awards are to be afforded significant deference, the District Court stated that the arbitrator had considered the parol evidence rule and the statute of frauds in his decision. The District Court went on to state that if the arbitrator's decision was incorrect, which the District Court did not find, it cannot be considered anything greater than a misapplication of the law.

¶34.Section 27-5-312, MCA (1997), specifies when an arbitration award must be vacated by a district court:

(1) Upon the application of a party, the district court shall vacate an award if:

(a) the award was procured by corruption, fraud, or other undue means;

(b) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(c) the arbitrators exceeded their powers;

(d) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of 27-5-213, as to prejudice substantially the rights of a party; or

(e) there was no arbitration agreement and the issue was not adversely determined in proceedings under 27-5-115 and the party did not participate in the arbitration hearing without raising the objection.

(2) The fact that the relief was such that it could not or would not be granted by a court of law or equity is not grounds for vacating or refusing to confirm the award.. . . .

(5) If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award.

We have previously determined that "when an arbitrator is aware of a clearly governing principle of Montana law, and blatantly refuses to follow it, the statutory conditions of § 27-5-312(1)(b), MCA, have in fact been met." *Geissler v. Sanem* (1997), 285 Mont. 411, 416, 949 P.2d 234, 237-38. The test for manifest disregard of the law requires that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. *See Geissler*, 285 Mont. at 417-18, 949 P.2d at 239.

¶35.Upon review of the arbitrator's Amended Award dated July 8, 1998, which was the award confirmed by the District Court, we conclude that the arbitrator did consider the statute of frauds and the parol evidence rule in rendering his decision. While he may not have mentioned these principles of law by name, he stated the following:

There are, however, rights which arise by virtue of the facts and circumstances surrounding the entire transactions between TWT, the Dillons and SHR. Some of these rights arise by virtue of an oral agreement which ordinarily would not be enforceable since there is no writing to evidence its terms and conditions. However, under Montana law if a party reasonably relies upon information and promises made by another, in some cases the oral agreement by and between the parties can be enforced by virtue of the doctrine of equitable estoppel.

¶36.It is apparent that the arbitrator considered the statute of frauds and the parol evidence rule in determining that the oral agreement between the parties would not ordinarily be enforceable without invoking the doctrine of equitable estoppel. Under our narrow standard of review of arbitration awards, we cannot overturn an award simply because the arbitrator may have misapplied the law. *See Geissler*, 285 Mont. at 417, 949 P.2d at 238. Therefore, we conclude that the District Court did not abuse its discretion when it refused to vacate the arbitration award on the basis that the arbitrator had disregarded Montana law.

## CROSS-APPEAL

¶37.Did the District Court abuse its discretion when it refused to award Stu Henkel Realty its attorney fees incurred in confirming the arbitration award?

¶38.Stu Henkel Realty argues that § 27-5-314, MCA (1997), allows for the recovery of attorney fees incurred in confirming an arbitration award. Appellants contend that the

Uniform Arbitration Act does not authorize a court to award attorney fees incurred in confirming an arbitration award. The District Court concluded that under Montana law attorney fees are not allowed unless specifically provided by statute or agreement except under extraordinary circumstances and concluded that since this was not such a circumstance, Stu Henkel Realty was not entitled to recover its attorney fees.

¶39.Traditionally, absent statutory or contractual authority, attorney fees will not be awarded. *See Tanner v. Dream Island, Inc.* (1996), 275 Mont. 414, 429, 913 P.2d 641, 650 (citations omitted). However, under limited circumstances "a district court may award attorney fees to make an injured party whole under its equity powers." *Tanner*, 275 Mont. at 429, 913 P.2d at 650 (citations omitted). In addition, in instances where bad faith or malicious behavior are involved, this Court has made an equitable award of attorney fees. Moreover, in *Foy v. Anderson* (1978), 176 Mont. 507, 580 P.2d 114, this Court created a narrow exception to the traditional rule for the award of attorney fees to compensate a party who, through no fault of her own, was forced to hire an attorney to write and argue a motion to dismiss. This exception has been narrowly drawn and is applicable only where the action is utterly without merit or frivolous. *Tanner*, 275 Mont. at 429, 913 P.2d 650-51 (citations omitted).

¶40.Section 27-5-314, MCA (1997), allows a district court to award the costs and disbursements incurred in pursuing an order confirming, modifying, or correcting an arbitration award. This statute does not provide for an award of attorney fees. Thus, we note that there is no statutory or contractual basis for an award of attorney fees.

¶41.Furthermore, we note that this case does not fit within any of the narrow exceptions to the traditional rule for the award of attorney fees. Stu Henkel Realty is not an injured party that would require the use of the Court's equitable powers to be made whole. Even though Stu Henkel Realty sought punitive damages due to the Appellants' alleged fraudulent behavior, the arbitrator determined that there was no evidence of fraud on the part of the Appellants. In addition, it cannot be said that Terra West's action against Stu Henkel Realty was without merit or frivolous, in light of the arbitrator's finding that Stu Henkel Realty improperly filed a construction lien and lis pendens. Therefore, we conclude that the District Court did not abuse its discretion when it refused to award Stu Henkel Realty its attorney fees incurred in confirming the arbitration award.

¶42.Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson specially concurs and dissents.

¶43.I concur with our decision as to the cross-appeal. I would reverse and remand, however, as to Issue 1 and would, therefore, not reach Issue 2.

¶44.I cannot agree with the Court's decision as to the first issue. In my view the District Court clearly abused its discretion when it refused to vacate the arbitration award, as is required by § 27-5-312(1)(c), MCA, on the basis that the arbitrator had exceeded his powers.

¶45.As noted by the majority, we most recently acknowledged in *Nelson v. Livingston Rebuild Center, Inc.*, 1999 MT 116, 294 Mont. 408, 981 P.2d 1185, that:

an arbitrator exceeds his powers when he acts in excess of the authority granted to him by the arbitration agreement, as when he decides issues which have not been submitted to him.

*Nelson, ¶ 16 (citations omitted).*

¶46.In the case at bar, it is undisputed that the equitable estoppel theory of liability was not submitted to the arbitrator nor was it covered by the claims submitted under the arbitration agreement. Section 2 of the parties Agreement to Arbitrate provides:

The parties agree that all claims identified in Plaintiff's Complaint will be submitted to binding arbitration. The following claims contained in Defendant's Answer, Counterclaim, and Third Party Complaint and Jury Demand will be submitted to binding arbitration:

COUNT I - Breach of Contract, COURT II - Quantum Meruit, COUNT III - Action on Surety, COUNT IV - Breach of Fiduciary and Statutory Duty, COUNT V - Breach of Operating Agreement, COUNT VI - Piercing the Corporate Veil, COUNT X - RICO, COUNT XI - Punitive Damages, and COUNT XIII - Judicial Dissolution. The parties agree that Stu Henkel Realty will be seeking a monetary judgment against both Dillon Management Consulting, Inc. and Terra West Townhomes, L.L.C. for Dillon Management Consulting, Inc.'s management of Terra West Townhomes, L.L.C. Both parties submit their respective attorneys fees claim to binding arbitration. The remaining claims contained in Defendant's Answer, Counterclaim and Third Party Complaint will be dismissed.

¶47.While Stu Henkel Realty advances all sorts of arguments as to why the arbitrator's decision on the basis of equitable estoppel was proper, it, nonetheless, concedes on brief, as it must, that this theory was not plead as a separate theory of recovery. As a result, this theory was not included as one of the claims submitted to binding arbitration under the Agreement to Arbitrate.

¶48.Moreover, while Stu Henkel Realty raised equitable estoppel and estoppel as affirmative defenses to Terra West's breach of contract claim, to the extent that those theories could conceivably be considered a "remaining claim [] contained in Defendant's Answer" those theories were specifically dismissed pursuant to the Agreement to Arbitrate and were specifically *not* submitted to arbitration. The words "equitable estoppel" and "estoppel," much less the underlying theories encompassed within those terms, never even appear in any of the claims submitted to the arbitrator under the Agreement to Arbitrate.

¶49.While both the trial court and Stu Henkel Realty go to great lengths to cobble up a basis to save the award which the arbitrator made, it is absolutely clear that the arbitrator purely and simply went beyond the parties' arbitration agreement by deciding an issue which was not submitted to him. In so doing the arbitrator exceeded his authority and his decision should not have been confirmed by the reviewing court. Section 27-5-312(1)(c), MCA.

¶50.Moreover, I do not agree with the majority's citation to *Public Service. Co. of Colorado v. Local No. III* (10th Cir. 1990), 902 F.2d 19. That case did not involve the submission of specific claims and legal theories to the arbitrator under a written arbitration agreement, as in the case at bar, but rather, involved an arbitration award arising from a labor dispute covered by a collective bargaining agreement. *Public Service,* 902 F.2d at

19. The court, in fact, stated: "On appeal, the real question for us is whether the arbitrators' award draws its essence from the agreement." *Public Service*, 902 F.2d at 20 (citations omitted). In the instant case, the arbitrator was not appointed to determine generally the "essence" of the parties' agreements. Quite to the contrary, his powers and authority were much narrower. He was appointed to decide the applicability and viability of certain specifically enumerated legal theories and causes of action. *Public Service* is inapposite.

¶51. Accordingly, I would reverse the District Court's order and remand with instructions that the arbitration award be vacated and the matter reheard before a new arbitrator to be selected by the court under §§ 27-5-312(4) and 27-5-211, MCA.

¶52. I dissent from our failure to do so.

/S/ JAMES C. NELSON

Justice William E. Hunt, Sr. concurs in the forgoing special concurrence and dissent.

/S/ WILLIAM E. HUNT, SR.