No. 00-856

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 306

LEON E. LANGEMEIER and MARILYN K.

LANGEMEIER and FIRST AMERICAN TITLE

INSURANCE COMPANY,

Petitioners and Respondents,

v.

JAMES R. KUEHL and ROBERT F. KUEHL,

Respondents and Appellants.

APPEAL FROM: District Court of the Twenty-Second Judicial District,

In and for the County of Carbon,

The Honorable Blair Jones, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Jack Sands, Attorney at Law, Billings, Montana

For Respondents:

Michael Dockery, Crowley Law Firm, Billings, Montana

W. Scott Green, West, Patten, Bekkedahl & Green, P.L.L.C., Billings, Montana

Submitted on Briefs: September 27, 2001

Decided: December 28, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 The Respondents, James R. Kuehl and Robert F. Kuehl, sought a Motion to Modify/ Vacate Arbitrator's Award and the Petitioners, Leon E. Langemeier, Marilyn K. Langemeier and First American Title Insurance Company, sought an Application for Confirmation of Arbitration Award from the Twenty-Second Judicial District Court, Carbon County. The Honorable Blair Jones denied the Kuehls' Motion and granted the Petitioners' Application. On August 4, 2000, the District Court issued a Confirmation of Arbitration Award and Judgment. The Kuehls appeal. We affirm.

¶2 The issues presented on appeal are as follows:

¶3 1. Did the District Court abuse its discretion by confirming the arbitrator's award of attorney's fees to the Langemeiers and First American Title Insurance Company?

¶4 2. Did the District Court abuse its discretion by confirming the actions of the arbitrator in allowing Robert Kuehl to be made a party to the proceedings and in awarding a judgment against him?

¶5 3. Is the injunctive language in the arbitrator's award so broadly written that it effectively takes the Kuehls' property without due process and unconstitutionally restricts their access to the courts?

FACTUAL BACKGROUND

¶6 James and Christine Kuehl owned a farm approximately six miles south of Bridger, Montana. The farm was divided by a driveway and abutted land owned by Bart Heiken. In 1994, Heiken sold to Leon and Marilyn Langemeier (collectively, the "Langemeiers") a small parcel of his property next to the Clarks Fork River and James and Christine Kuehl's

property. From the boundary line between James and Christine's and the Langemeiers' property to the highway, the Langemeiers built a gravel road upon a county road easement.

¶7 In 1995, James and Christine Kuehl sued several defendants, including the Petitioners. James and Christine claimed that the county road easement had been abandoned, asked to quiet title and sought damages for trespass. As motions for summary judgment were pending, the district court ordered the parties into mediation.

¶8 On June 26, 1997, the parties participated in a settlement conference. James and his father, Robert, were present at the conference but Christine did not attend. She filed for divorce around that time. At the end of the settlement conference, James and Robert Kuehl (collectively, the "Kuehls"), the Langemeiers, a representative of First American Title Insurance Company ("First American") and representatives of Carbon County signed a Memorandum of Understanding. Pursuant to the Memorandum of Understanding, the parties signed a Settlement Agreement and Release of All Claims (the "Settlement Agreement") on or around July 30, 1997. The district court dismissed with prejudice James and Christine's lawsuit.

¶9 Both the Memorandum of Understanding and the Settlement Agreement provided that the parties would resolve any disputes arising under the agreements through arbitration. On December 9, 1998, the Langemeiers requested arbitration, asserting that James Kuehl had interfered with the Langemeiers' use of the road, thus violating the Settlement Agreement. On December 16, 1998, First American joined in the request for arbitration, claiming that James Kuehl violated the Settlement Agreement by refusing to allow Neil Bratton to conduct a survey. First American stated that the survey was necessary to provide insurable title to the property that would be conveyed under the Memorandum of Understanding. Before the arbitration hearing, Robert Kuehl purchased a half interest in the property at issue for $10 and other consideration.

¶10 An arbitration hearing was held on December 1, 1999. On December 13, 1999, the arbitrator, T. Thomas Singer, made a Preliminary Award and, on January 18, 2000, made a Final Arbitration Award. Singer awarded the Langemeiers $801 against James Kuehl and provided an injunction against any further action by the Kuehls concerning the disputed roadway. Singer also awarded attorney's fees to the Langemeiers and First American jointly and severally against James and Robert Kuehl.

¶11 On December 17, 1999, the Langemeiers petitioned the District Court to confirm the

Arbitration Award. On April 10, 2000, the Kuehls moved to modify or vacate the Arbitration Award to eliminate the award of attorney's fees, eliminate the judgment against Robert Kuehl and restrict the breadth of the injunction. The District Court held a hearing on June 5, 2000. On July 17, 2000, the District Court issued an order denying the Kuehls' motion and granting the Langemeiers' petition. The District Court confirmed the Arbitration Award on August 4, 2000. The Kuehls appeal.

## STANDARD OF REVIEW

¶12 Montana statute limits judicial review of an arbitration award. *Terra West Townhomes, L.L.C. v. Stu Henkel Realty*, 2000 MT 43, ¶ 22, 298 Mont. 344, ¶ 22, 996 P.2d 866, ¶ 22; *Nelson v. Livingston Rebuild Ctr., Inc.*, 1999 MT 116, ¶ 11, 294 Mont. 408, ¶ 11, 981 P.2d 1185, ¶ 11. When parties submit a matter to binding arbitration, courts are not permitted to review the merits of the controversy, but may only confirm, vacate, modify, or correct an arbitration award. *See* §§ 27-5-311 to -313, MCA; *Terra West Townhomes*, ¶ 22, *Nelson*, ¶ 11. The standard of review for a court's refusal to modify or vacate an arbitration award is whether the court abused its discretion. *Terra West Townhomes*, ¶ 22; *Stockade Enters. v. Ahl* (1995), 273 Mont. 520, 522, 905 P.2d 156, 157 (citations omitted).

## ISSUE ONE

¶13 Did the District Court abuse its discretion by confirming the arbitrator's award of attorney's fees to the Langemeiers and First American Title Insurance Company?

¶14 The Kuehls claim that the District Court erred in confirming the arbitrator's award of attorney's fees. They argue that the arbitrator had neither statutory nor contractual authority to make such an award. In particular, the Kuehls contend that the Settlement Agreement stated that attorney's fees would not be awarded in future disputes. The Langemeiers and First American counter that all of the parties involved in the arbitration hearing requested attorney's fees and no party objected to these requests. Furthermore, the Langemeiers argue that an award of attorney's fees is proper where an arbitrator finds that a party's acts were "malicious and reprehensible."

¶15 The Settlement Agreement states, in part, that:

the parties do hereby mutually release, acquit, and forever discharge the other, and

do hereby agree to hold harmless the other and their respective successors, . . . agents, attorneys, insurance companies, stockholders and assigns (including without limitation Carbon County Abstract & Title Company) of and from any and all actions . . . including without limitation attorney's fees and punitive damages, which have arisen, could arise, or in any way related to the acts, omissions, and/or incidents described in the Complaint and other documents and pleadings filed in the Action. The Kuehls and First American expressly acknowledge and agree that the foregoing release shall include all claims . . . including without limitation attorney's fees and punitive damages, which have arisen, could arise, or in any way related to the right-of-way for the [disputed property].

The District Court found that this language did not expressly preclude attorney's fees incurred in the arbitration proceeding. Instead, the court stated that First American could rely on the hold harmless language to recover attorney's fees. We need not decide the actual intent of the above language. It is sufficient for a court merely to determine that the arbitrator could rationally derive his remedy from the language of the arbitration agreement. *See Nelson*, ¶ 19. The fact that a court may not have awarded a party damages is not grounds for vacating an arbitrator's award. *See* § 27-5-312(2), MCA; *Nelson*, ¶ 18; *Duchscher v. Vaile* (1994), 269 Mont. 1, 5, 887 P.2d 181, 184.

¶16 Here, not only did the arbitrator and the District Court judge conclude that attorney's fees were an available award under the Settlement Agreement, but all of the parties also apparently felt entitled to an award of attorney's fees. During the arbitration, each party submitted a request for fees to the arbitrator.[1] The arbitrator noted in the Preliminary Award that the Kuehls not only requested costs and fees before the arbitration, but they also offered no argument or authority opposing First American's request for attorney's fees during the arbitration. It was only after the arbitrator decided against the Kuehls that they complained that the arbitrator exceeded his authority by awarding such fees. The only argument that the Kuehls presented to contradict this was Robert Kuehl's own testimony that he did not recall asking for fees and his testimony that he objected to the other side's request for fees. Reviewing this record, we conclude that the arbitrator could rationally derive a remedy of attorney's fees.

¶17 In addition, an arbitrator may, under limited circumstances, award attorney's fees through his equity powers where bad faith or malicious behavior is involved. *See Terra West Townhomes*, ¶ 40 (listing bad faith or malicious behavior as narrow exceptions to the

traditional rule that an arbitrator should not award attorney's fees without a statutory or contractual basis). In the case at bar, the arbitrator found that, after the parties executed the Settlement Agreement, "[t]he Kuehls' behavior has been malicious and reprehensible." The arbitrator also noted that Robert Kuehl's behavior has "turned a dispute over 900 square feet of ground in a beet field near Bridger - ground that cannot be worth $2,000, and that has never belonged to him - into litigation that has cost him and the other parties tens of thousands of dollars." We, therefore, conclude that the arbitrator had a reasonable basis to award attorney's fees under his equitable powers.

¶18 We note, in passing, that the Kuehls argue that the respondents improperly submitted their request for attorney's fees and that the arbitrator miscalculated the fees. The Kuehls, however, offer little support for these contentions, either factual or legal, other than citing various Montana Code sections. Therefore, we find no basis for addressing these arguments.

¶19 For the above reasons, we conclude that the District Court did not abuse its discretion by confirming the arbitrator's award of attorney's fees to the Langemeiers and First American.

## ISSUE TWO

¶20 Did the District Court abuse its discretion by confirming the actions of the arbitrator in allowing Robert Kuehl to be made a party to the proceedings and in awarding a judgment against him?

¶21 The Kuehls argue that, because Robert Kuehl was never a party to the original lawsuit, the arbitrator could not make him a party to the arbitration proceedings nor award a judgment against him. In making Robert Kuehl a party, the arbitrator, according to the Kuehls, exceeded his powers. The Langemeiers and First American counter that Robert Kuehl became a party by executing the Memorandum of Understanding and the Arbitration Agreement, which are the agreements at issue in this dispute. First American further contends that, because the parties expressly submitted the issue to the arbitrator, he did not exceed his powers in determining that Robert Kuehl was a party.

¶22 The dispute over the Final Arbitration Award arose out of the Settlement Agreement and the remedies set forth in that document. Robert Kuehl signed and was a party to that agreement. As the arbitrator noted in the Preliminary Award, Robert Kuehl did not

identify himself as an assistant, representative or agent of James Kuehl during the arbitration or in either the Memorandum of Understanding or the Settlement Agreement. This contrasts with several other signatories of the Settlement Agreement who did identify themselves as representatives of other parties. The arbitrator also found that Robert Kuehl could not claim ignorance of the law of contracts and agency as an excuse because he presented himself as an expert in the law during the arbitration.

¶23 Nevertheless, the Kuehls contend that the arbitrator somehow violated Robert Kuehl's due process rights by making him a party. We disagree. While the Kuehls argue that Robert Kuehl did not receive notice of his status as a party prior to the proceedings, he signed the Settlement Agreement over two years before the arbitration. The arbitrator specifically found that Robert Kuehl's testimony that he did not intend for the agreements to bind him was not credible.

¶24 The matter was clearly before the arbitrator. An arbitrator's power concerning every body of law is broader than the power of the courts concerning the same bodies of law. *See Terra West Townhomes*, ¶ 31. So long as the arbitrator rationally derived the fashioned remedy from the agreement, a court will uphold it on review. *See Nelson*, ¶ 19. Robert Kuehl's signature on the Memorandum of Understanding and the Settlement Agreement provided the arbitrator a rational basis to find that Robert Kuehl was properly a party to the proceedings. Therefore, we conclude that the District Court did not abuse its discretion by confirming the arbitrator's decision to make Robert Kuehl a party to the proceedings and to award a judgment against him.

## ISSUE THREE

¶25 Is the injunctive language in the arbitrator's award so broadly written that it effectively takes the Kuehls' property without due process and unconstitutionally restricts their access to the courts?

¶26 The Kuehls argue that language in the Final Arbitration Award denies them the right to protect their property and prevents them from accessing the courts as guaranteed under Article II, Section 16, of the Montana Constitution. The Langemeiers counter that the disputed road does not belong to the Kuehls. Because the property is a public road, the Langemeiers allege that the Kuehls do not have an interest that allows them to claim a constitutional violation. First American contends that the language of the arbitrator's award is not overly broad and that the Kuehls did not establish grounds for vacating or

modifying the injunctive language.

¶27 The final arbitration award contains the following language:

> James R. and Robert F. Kuehl, and their heirs, personal representatives, successors and assigns, are prohibited and enjoined from commencing or prosecuting any action or proceeding, whether formal, informal, administrative or judicial, that arises from or is related to the easterly 30 feet of Plat No. 1685 or to the other acts, omissions or incidents described in any of the pleadings or documents filed in Carbon County Cause No. DV 95-02 or in the briefs and exhibits submitted in this arbitration; or that in any way challenges or questions the ownership of the easterly 30 feet of Pla[t] No. 1685.

¶28 The District Court found that prohibiting the Kuehls from commencing or prosecuting an action or proceeding regarding property in which they have no interest does not violate their due process rights nor improperly restrict their access to the courts. We agree. As the District Court pointed out, the language of the award was designed to stave off further "malicious and reprehensible" behavior by the Kuehls. The injunctive language does this in two different ways.

¶29 First, the injunctive language prohibits the Kuehls from bringing an action "that arises from or is related to the easterly 30 feet of Plat No. 1685." It also prevents the Kuehls from bringing an action "that in any way challenges or questions the ownership of the easterly 30 feet of Pla[t] No. 1685." The Kuehls claim that this language effectively takes property from them without due process of law. Their argument ignores that the Memorandum of Understanding, the Settlement Agreement and the Final Arbitration Award all establish that the Kuehls do not have a property interest in the disputed property. The Kuehls cannot claim the language deprives them of the use of their property when the property is not their's to use. To prevail on their due process claim, the Kuehls must have a definite property interest and show that such interest was, under color of state law, abridged without appropriate process. *See ISC Distributors, Inc. v. Trevor* (1995), 273 Mont. 185, 191, 903 P.2d 170, 173; *see also Board of Regents v. Roth* (1972), 408 U. S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548. Because they do not have a property interest in the disputed roadway, the Kuehls' due process claim is without merit.

¶30 Second, the language of the Arbitration Award prohibits the Kuehls from litigating matters related to the disputed roadway or described in the Arbitration Action or

proceedings. The Kuehls claim that this language denies them access to the courts. We, like the District Court, do not read the language so broadly.

¶31 The injunctive language seeks only to restrain the Kuehls from contesting matters previously decided. The Kuehls have already enjoyed access to the courts regarding these matters as this dispute has wound its way through two arbitrations, approval by the District Court and now an appeal before us. While Article II, Section 16, of the Montana Constitution guarantees every person access to the courts, it does not grant a person license to relitigate a cause or to burden the resources of the court with successive claims. *See State v. Perry* (1988), 232 Mont. 455, 463, 758 P.2d 268, 273. As we have recited in the past, "judicial economy dictates restrictive limitations on reruns." *Coleman v. State* (1981), 194 Mont. 428, 439, 633 P.2d 624, 630, *cert. denied* (1982), 455 U.S. 983, 102 S. Ct. 1492, 71 L.Ed.2d 693, (citing *United States ex rel. Townsend v. Twomey* (7th Cir. 1971), 452 F.2d 350, 357, *cert. denied* (1972), 409 U.S. 854, 93 S.Ct. 190, 34 L.Ed.2d 98).

¶32 The Respondents presented a request for this injunctive language to the arbitrator for his determination. The language restrains the Kuehls from pursuing repetitive claims previously resolved by the Settlement Agreement concerning property in which they have no interest. Even if the arbitrator wrote the injunction more broadly than a court of law or equity would have written it, we will not vacate the award. *See* § 27-5-312(2), MCA; *Nelson*, ¶ 18. We thus conclude that the injunctive language was not so broadly written that it either effectively takes the Kuehls' property without due process or unconstitutionally restricts their access to the courts.

¶33 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler concurring in part and dissenting in part.

¶34 I concur with the majority's conclusions that the District Court did not abuse its discretion when it confirmed the arbitrator's award of attorney's fees and when it confirmed the arbitrator's decision to make Robert Kuehl a party to the proceedings and award judgment against him.

¶35 However, I dissent from that part of the majority opinion which affirms an arbitrator's authority to limit access to Montana's courts. Access to Montana's courts is guaranteed by Article II, Section 16, of the Montana Constitution without regard to the merits of a person's claim. Not even judges or justices can deny access to Montana's courts. An arbitrator who is a mere private contractor to resolve disputes certainly has no authority to deny a constitutional right based on his conclusions about the merits of a claim before the claim is even presented. While I agree that claims, once filed, may be dismissed based on the fact that they present issues previously decided, I disagree that a person may be prospectively prohibited from making a claim based on the presumption that it will be procedurally barred. If a person uses courts to harass another party, sanctions are available.

¶36 Therefore, I conclude that the injunctive language of the arbitrator's award effectively denied Kuehls their constitutional right of access to Montana's courts. For these reasons, I would reverse that part of the District Court judgment which held otherwise and I dissent from the majority's failure to do so.

/S/ TERRY N. TRIEWEILER

1. The Kuehls were not represented by counsel during the arbitration. Instead, Robert Kuehl assisted his son, James. The arbitrator noted in the Preliminary Award that Robert Kuehl "presented himself as an expert in the law." Therefore, in their preparation brief to the arbitrator, the Kuehls asked for "technical assistance" fees instead of attorney's fees.