JUSTICE McKINNON,
concurring.
¶39 I concur with the Court’s decision to reverse the order of the District Court and remand with instructions to confirm the arbitration award in this case. I believe our analysis would benefit, however, from more thorough consideration of the principles underlying judicial review of arbitration awards. I therefore write separately to address two issues: the standard of review and the limited public policy exception to enforcement of arbitration awards.
¶40 First, our prior decisions have not clearly distinguished between the standards of review to be employed by a district court reviewing an arbitrator’s award and those to be employed by an appellate court reviewing a district court’s decision to vacate or confirm an award. Further, our review of a district court’s decision to vacate or confirm an award has been inconsistent, and we have applied an incorrect abuse of discretion standard.
¶41 I begin with a discussion of the role of an arbitrator in interpreting a collective bargaining agreement. A collective bargaining agreement is “more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.” United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S. Ct. 1347, 1351 (1960). To address these unanticipated circumstances and “fill in the gaps,” the parties agree to choose an arbitrator as their “ ‘officially designated “reader” of the contract,’ ” *196 who will provide "the means through which they agree in handle the anticipated unanticipated omissions of the [collective bargaining agreement].’ ” Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, etc., 886 F.2d 1200, 1205 (9th Cir. 1989) (quoting Theodore J. St. Antoine, Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and Its Progeny, 75 Mich. L. Rev. 1137, 1140 (1977)). When an arbitrator interprets the collective bargaining agreement," “he is speaking for the parties, and his award is their contract.’ ” Stead Motors, 888 F.2d at 1205 (quoting St. Antoine, supra at 1140). The arbitration award is an expression of the will of the parties, and is therefore afforded a "nearly unparalleled degree of deference.” Stead Motors, 886 F.2d at 1205. As long as an arbitrator’s award is based on his or her interpretation of the contract, a court may not disturb the award even if it believes the arbitrator’s interpretation of the contract to be factually or legally in error. Terra W. Townhomes, L.L.C. v. Stu Henkel Realty, 2000 MT 43, ¶ 37, 298 Mont. 344, 996 P.2d 866; Nelson v. Livingston Rebuild Ctr., Inc., 1999 MT 116, ¶ 18, 294 Mont. 408, 981 P.2d 1185 (citing United Paperworkers lntl. Union v. Misco, Inc., 484 U.S. 29, 38, 108 S. Ct. 364, 370-71 (1987)).
¶42 Thus, because it is the arbitrator’s construction of the contract that was bargained for and it is the arbitrator who will state the parties’ bargain and fill in the gaps, the district court may not overrule the arbitrator simply because its interpretation of the contract is different from the arbitrator’s. United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S. Ct. 1358, 1362 (1960). Deference to the arbitrator’s construction of the contract is premised on the principle that courts are not free to relieve a party of his obligations under a contract merely because those obligations have turned sour for him. Stead Motors, 886 F.2d at 1206. This is the conceptual underpinningfor judicial deference to an arbitrator’s award. ¶43 In accordance with the policy of deference to the decision of an arbitrator, a district court’s review of an arbitration award is extremely narrow. Opinion, ¶ 14; Geissler v. Sanem, 285 Mont. 411, 414-15, 949 P.2d 234, 237 (1997). Under our statutes, a district court "shall vacate” an arbitrator’s award if:
(a) the award was procured by corruption, fraud, or other undue means;
(h) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
*197 (c) the arbitrators exceeded their powers;
(d) the arbitrators refused to postpone the hearing upon sufficient cause being shown or refused to hear evidence material to the controversy or otherwise conducted the hearing ... in a manner that substantially prejudiced the rights of a party;
(e) there was no arbitration agreement and the issue was not adversely determined ... and the party did not participate in the arbitration hearing without raising the objection; or
(f) a neutral arbitrator failed to make a material disclosure.... Section 27-5-312(1), MCA. If there are no grounds presented for vacating, modifying, or correcting the award, the district court “shall confirm” the award. Section 27-5-311, MCA. The use of “shall” in our statutes is commonly understood to be mandatory. Gaustad v. City of Columbus, 265 Mont. 379,381-82,877 P.2d 470,471 (1994). A district court is afforded no discretion in its decision to confirm or vacate the award of an arbitrator. See §§ 27-5-311, -312, MCA.
¶44 Sections 27-5-311 and -312, MCA, provide the standard of review upon which a “district court” may vacate or confirm an award. If a party applies to the district court to vacate an award for any of the reasons enumerated in § 27-5-312(l)(a)-(f),MCA, and the district court is satisfied that sufficient facts have been presented substantiating one of these subsections, then the district court “shall” vacate the award of the arbitrator. Nevertheless, in determining whether the “arbitrators exceeded their powers,” for example, the district court is still bound by the rule of deference to the arbitrator’s decision and may not substitute its legal conclusions and factual findings, even if the arbitrator’s are clearly erroneous. Because the parties have contracted to have disputes settled by their chosen arbitrator rather than by a judge, it is the arbitrator’s view of the facts and interpretation of the collective bargaining agreement that they have agreed to accept. Misco, 484 U.S. at 37-38,108 S. Ct. at 370. “Courts thus do not sit to hear claims of factual and legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.” Misco, 484 U.S. at 38, 108 S. Ct. at 370.
¶45 I turn next to the standard of review an appellate court should apply when reviewing a district court’s decision to vacate or confirm an arbitration award. The policy of deference to the decision of an arbitrator has led some courts to adopt a similar policy of deference to a trial court’s decision to confirm an arbitration award. See, e.g., Robbins v. Day, 954 F.2d 679, 682 (11th Cir. 1992), overruled, in part by First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 948, 115 S. *198 Ct. 1920, 1926 (1995). The Eleventh Circuit, for example, adopted an abuse of discretion standard when reviewing a district court’s decision to confirm an award, but a de novo standard when reviewing a district court’s decision to vacate an award, reasoning as follows:
By reversing a district court’s denial of a motion to vacate an arbitration award only upon abuse of discretion, we further the presumption that the arbitration proceeding was proper. Similarly, when a district court goes against the presumption that it should affirm an arbitration award, we must review de novo to protect the integrity of the arbitration process.
By broadly reviewing the grant of a motion to vacate an arbitration award, while narrowly reviewing confirmation of an award, we emphasize the unique context of arbitration, which requires deferential review to promote the primary advantages of arbitration — speed and finality. De novo review of the granting of a motion to vacate enables us to assess whether the district court accorded sufficient deference in the first instance, an assessment that a more restrictive appellate review would frustrate.
Robbins, 954 F.2d at 682.
¶46 Similar reasoning may have influenced our adoption of the abuse of discretion standard in Duchscher v. Voile, 269 Mont. 1, 5, 887 P.2d 181, 184 (1994), where we took the standard — without discussion — from an Arizona decision that followed a polity of deference to the trial court. See Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co., 868 P.2d 1014, 1021 (Ariz. Ct. App. 1993) (citing Park Imperial, Inc. v. E.L. Farmer Constr. Co., 454 P.2d 181, 183-84 (Ariz. Ct. App. 1969) (“This Court on appeal is bound to view the action of the trial court in a light most favorable to upholding the trial court’s determination, just as the trial court was required to view the arbitration award in a light most favorable to upholdingthe said award ... .” (citations omitted))), vacated, 882 P.2d 1274 (Ariz. 1994). It appears that we have applied this standard only when reviewing a district court’s refusal to vacate an arbitration award. See, e.g., Teamsters Union Local No. 2, Intl. Bhd. of Teamsters v. C.N.H. Acquisitions, Inc., 2009 MT 92, ¶ 14, 350 Mont. 18, 204 P.3d 73; Paulson v. Flathead Conservation Dist., 2004 MT 136, ¶ 18, 321 Mont. 364, 91 P.3d 569; Terra W., ¶ 31.
¶47 The notion that different standards of review should be applied depending on the outcome in the lower court was ultimately rejected by the United States Supreme Court, which held that “courts of appeals should apply ordinary, not special, standards when reviewing *199 district court decisions upholding arbitration awards,” and explicitly counseled against adoption of a standard of review “more likely [to] produce a particular substantive result.” First Options, 514 U.S. at 948, 115 S. Ct. at 1926. The Supreme Court concluded that although “courts grant arbitrators considerable leeway when reviewing most arbitration decisions ... that fact does not mean that appellate courts should give extra leeway to district courts that uphold arbitrators.” First Options, 514 U.S. at 948, 115 S. Ct. at 1926. Thus, review of a district court decision to vacate or confirm an arbitration award “should proceed like review of any other district court decision ... accepting findings of fact that are not Clearly erroneous’ but deciding questions of law de novo.” First Options, 514 U.S. at 947-48, 115 S. Ct. at 1926.
¶48 The Court adopts First Options in part, noting that we should not apply “special” standards of review, and correctly applies de novo review to the District Court’s conclusions of law in the present case. Opinion, ¶ 11. The Court does not explicitly reject the abuse of discretion standard we have applied in other cases, however, and thus we appear to be left in the circumstance specifically condemned by First Options — applying an abuse of discretion standard in some cases, and de novo review in others. The Court does not dispel the confusion surrounding our standards of review, and I believe may increase it. I would clarify our case law to establish that when reviewing a district court’s decision to confirm or vacate an arbitration award, application of an abuse of discretion standard is inappropriate. Instead, we review the district court’s conclusions of law de novo, and any necessary findings of fact for clear error.
¶49 It is important to be clear that the only findings of fact a district court may make relate to one of the enumerated subsections of § 27-5-312(1), MCA. Moreover, as is clear from the language of § 27-5-312(lXa)-(f), MCA, any factual findings made by the district court necessarily would be collateral to the underlying arbitration proceedings and would not relate in any way to the merits of the arbitration award. For example, if it were alleged that the award should be vacated because procured by corruption, fraud, or undue means, § 27-5-312(l)(a), MCA, the district court would make factual findings regarding these specific allegations which would be reviewed by this Court for clear error.
¶50 In summary, because this case involves review of both an arbitrator’s decision and the decision of the district court, two standards of review are applicable. Sections 27-5-311 and -312, MCA, *200 clearly provide the standard to review the arbitrator's decision. Scrutiny of the award by the district court is extremely limited. If the award, on its face, represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. George Day Constr. Co. v. United Bhd. of Carpenters and Joiners, Local 354, 722 F.2d 1471, 1477 (9th Cir. 1984). This remains so even if the basis of the arbitrator's decision contains erroneous factual findings and legal conclusions. George Day Constr. Co., 722 F.2d at 1477; Am. Postal Workers v. U.S. Postal Serv., 682 F.2d 1280, 1284 (9th Cir. 1982). As long as the arbitrator is “even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” Misco, 484 U.S. at 38, 108 S. Ct. at 371. Finally, when reviewing a district court’s decision to either confirm or vacate an arbitration award, we should review factual findings regarding one of the enumerated subsections for clear error and legal conclusions for correctness.
¶51 While courts generally must defer to an arbitrator's interpretation of a contract, a limited exception exists where that interpretation is directly contrary to public policy, and therefore unenforceable. W.R. Grace & Co. v. Local Union 759, Intl. Union of United Rubber, 461 U.S. 757, 766, 103 S. Ct. 2177, 2183 (1983). An arbitrator's award is the contract of the parties, and thus, like any contract, it may not be enforced if it violates an explicit public policy. W.R. Grace, 461 U.S. at 766, 103 S. Ct. at 2183. The Court correctly observes that this exception only applies where the arbitrator’s award violates a specific law or legal precedent. Opinion, ¶ 24. A court may not refuse to enforce an arbitrator’s award simply because the court believes the award does not generally serve the public interest. Misco, 484U.S. at 43, 108 S. Ct. at 373. Where an arbitrator has awarded reinstatement of an employee, a court may not decline to enforce the award on the grounds that the employee’s underlying conduct violated public policy or was not in the public interest. Stead Motors, 886 F.2d at 1212. Instead, the court must find that a specific law or legal precedent explicitly prohibits reinstatement of the employee. Stead Motors, 886 F.2d at 1212-13.
¶52 In this case, the District Court found that “the ordering of Tubaugh’s reinstatement violates public polity. The public polity in this case is the fitness for duty of police officers and the corresponding safety of other officers and the general public.” I do not wish to diminish these concerns, and indeed I am gravely concerned by *201 Tubaugh’s conduct. Nevertheless, neither the Distract Court nor the City point to any specific law or precedent which bars the continued employment of an officer in Tubaugh’s position. Section 45-5-204, MCA, states that a person convicted of the offense of mistreating prisoners must be removed from employment, but Tubaugh has not been convicted of that offense. No law would have prevented the City from continuing to employ Tubaugh had it wished to do so; indeed, the arbitrator found that Police Chief Darren Raney “was quite clear in the hearing that his objective was to retain Tubaugh,” until he received the results of the fitness for duty examination.
¶53 While the fitness for duty of police officers is of significant public concern, no law or legal precedent prohibits the continued employment of an officer based solely on a questionable fitness evaluation. There is instead a well-defined administrative process for revoking the credentials of an officer who is determined to be unfit for duty. A member of a city police department must meet minimum qualifying standards promulgated by the Montana Public Safety Officer Standards and Training Council. Section 7-32-4112, MCA. A person whose certification as a police officer has been revoked or suspended by that Council may not act as a police officer. Section 7-32-303(8), MCA. The Council considers complaints against public safety officers, and may revoke an officer’s certification based on “a physical or mental condition that substantially limits the person’s ability to perform the essential duties of a public safety officer, or poses a direct threat to the health and safety of the public or fellow officers,” among other grounds. Admin. R. M. 23.13.702(2)(b).
¶54 Had a complaint been filed with the Council, and Tubaugh’s certification revoked based on the finding that he was not fit for duty due to or other aspects of his conduct, his continued employment would then violate an explicit, well-defined public policy, and the court could not enforce an award ordering his reinstatement. See Misco, 484 U.S. at 43,108 S. Ct. at 373. On the record before us, it appears that those steps were not taken, and that Tubaugh remained certified as a police officer.
¶55 Because Tubaugh was not convicted of mistreating prisoners, and because his certification as a police officer was not revoked by the Montana Public Safety Officer Standards and Training Council, his reinstatement as a police officer did not violate the explicit public policies defined by §§ 45-5-204 and 7-32-303(8), MCA. Although Tubaugh’s conduct may offend general considerations of public interests, the arbitrator’s decision to order his reinstatement was not illegal. The public policy exception to enforcement of arbitration *202 awards is narrow, Stead Motors, 886 F.2d at 1210, and its requirements were not met in this case. I therefore concur with the Court’s conclusion that the District Court erred when it found that the award violated public policy. Opinion, ¶ 28. However, I believe the District Court’s error was in failing to correctly identify an explicit public policy that was violated by Tubaugh’s reinstatement. The Court’s statement that the District Court “impermissibly substituted the Arbitrator’s factual determinations withits own” seems out of place in this analysis. Opinion, ¶ 28.
¶561 agree that the arbitrator’s award was based on her interpretation of the collective bargaining agreement and did not violate an explicit and well-defined public policy. I further agree that the arbitrator had authority to determine the credibility of the fitness for duty evaluation, and in deference to the broad latitude afforded the arbitrator under the collective bargaining agreement, I agree that she was authorized to fashion a remedy that included removal of the fitness for duty examination from Tubaugh’s personnel file. Although I believe the Court should go further in its discussion of the standard of review applicable in this case, I concur in the decision to reverse the order of the District Court and remand with instructions to confirm the arbitrator’s award.
¶57 I concur.