FILED

November 25 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0083

DA 14-0083

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 314

CITY OF LIVINGSTON, MONTANA,
AND ITS POLICE DEPARTMENT,

　　　　Petitioner and Appellee,

　v.

MONTANA PUBLIC EMPLOYEES ASSOCIATION
ON BEHALF OF MATTHEW TUBAUGH,

　　　　Respondent and Appellant.

APPEAL FROM:　　District Court of the Sixth Judicial District,
　　　　　　　　In and For the County of Park, Cause No. DV 13-80
　　　　　　　　Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Carter Picotte, Attorney at Law, Helena, Montana

　　　　For Appellee:

　　　　　　Bruce E. Becker, Livingston City Attorney, Livingston, Montana

　　　　　　　　　　Submitted on Briefs:　July 23, 2014
　　　　　　　　　　　　　　Decided:　November 25, 2014

Filed:

　　　　_____
　　　　　　　　　　Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     The Montana Public Employees Association, on behalf of Matthew Tubaugh, appeals the decision of the Sixth Judicial District Court to vacate an arbitrator's award in his favor. We address the following issues on appeal:

*1. Whether the Arbitrator exceeded her powers by requiring progressive discipline pursuant to the Collective Bargaining Agreement.*

*2. Whether the Arbitrator violated public policy by requiring the City of Livingston to reinstate Tubaugh to his previous position or one of comparable pay.*

*3. Whether the District Court erred when it vacated the Award on the grounds that the Award prevented the City of Livingston from requiring Fitness for Duty Examinations.*

*4. Whether the Arbitrator exceeded her powers by ordering the City of Livingston to expunge the Fitness for Duty Examination from Officer Tubaugh's personnel file.*

¶2     We reverse the District Court and remand with instructions to confirm the arbitration award.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

¶3     The City of Livingston hired Matthew Tubaugh as a police officer in 2004. Tubaugh initially met or exceeded expectations as an officer. Prior to 2011, Tubaugh had received only a few minor reprimands. A series of incidents that occurred in 2011 and 2012, however, led to his being discharged from the police force. The first incident occurred when Tubaugh testified in a criminal case on December 12 and 15, 2011. During a City Court trial, he told the judge that he disagreed with a ruling of the court

---

[1] The facts are taken from the findings of fact in the Arbitration Award. No record of the arbitration proceedings is before the Court on appeal.

2

and later became aggressive and argumentative toward the defendant. Next, on January 6, 2012, Tubaugh disagreed with his supervising officer and attempted to confront the County Attorney. When he was told that the County Attorney was not available, he made a profane outburst. Later, on April 15, 2012, Tubaugh and another officer made an arrest. At the detention center, he lost his composure, called the arrestee a "small child" and a "baby," and slammed down his clipboard. He then injected himself into the booking process and charged the arrestee with obstruction of justice after the arrestee was reluctant to provide an address.

¶4 On June 8, 2012, Tubaugh criticized a co-worker, Jessica Kynett, for using the internet at work and for missing work for physical therapy. Tubaugh was not Kynett's supervisor. The interaction became confrontational and Tubaugh ignored an order from Sergeant Dale Johnson to "knock it off." On June 23, 2012, Tubaugh and another officer made another arrest, this time for disorderly conduct. At the detention center, Tubaugh's conduct escalated the situation and ultimately provoked a physical altercation. Detention staff helped Tubaugh subdue the arrestee. In addition to the initial charges, Tubaugh charged the arrestee with assault for the altercation.

¶5 On June 28, 2012, Police Chief Darren Raney issued a letter of reprimand to Tubaugh, primarily for the confrontation with Kynett, but the letter also referenced other incidents of inappropriate conduct. A letter of complaint was filed concerning Tubaugh's behavior during one of the arrests.

¶6 On July 25, 2012, Tubaugh was placed on paid administrative leave. Subsequent investigations, conducted by Raney, found that Tubaugh had engaged in unprofessional conduct and that his use of force against one of the prisoners was not objectively reasonable. Raney also became concerned that Tubaugh had displayed an increasing tendency to respond to disrespectful or insufficiently deferential behavior with charges such as disorderly conduct, resisting arrest, obstruction, or assaulting an officer.

¶7 Raney determined that a fitness for duty examination was appropriate. Raney ordered Tubaugh to complete an examination with George Watson, a psychologist with a focus on law enforcement fitness for duty. Watson concluded that Tubaugh suffered from a personality disorder, and that he exhibited symptoms of paranoia, narcissism, and histrionic personality disorder. Watson concluded that he was unable to recommend that Tubaugh continue as an officer. After reviewing Watson's report and providing Tubaugh the opportunity to respond, Raney recommended Tubaugh's discharge. The recommendation was accepted and Tubaugh was discharged on October 29, 2012.

¶8 Tubaugh protested his discharge pursuant to his rights under the collective bargaining agreement (CBA) in effect at the time between the City of Livingston and the Montana Public Employees Association (MPEA). Pursuant to the CBA's binding arbitration provision, an arbitration hearing was held. On May 20, 2013, Arbitrator Anne MacIntyre determined that while there was just cause to discipline Tubaugh, the proper disciplinary action was a three-month suspension without pay. She ordered that the City of Livingston reinstate Tubaugh to his previous position or to one of comparable pay, and

pay Tubaugh back pay and benefits until his reinstatement. She also ordered that the City of Livingston expunge the fitness for duty examination from Tubaugh's personnel file.

¶9 The City of Livingston timely petitioned to vacate the Arbitrator's award. Following briefing and oral argument on the petition, the District Court issued an order on January 15, 2014, vacating the Arbitrator's award. The MPEA now appeals that ruling.

## STANDARDS OF REVIEW

¶10 The parties cite our precedent that "[t]he standard of review for a court's refusal to modify or vacate an arbitration award is whether the court abused its discretion." *Terra W. Townhomes, L.L.C. v. Stu Henkel Realty*, 2000 MT 43, ¶ 22, 298 Mont. 344, 996 P.2d 866; *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 18, 321 Mont. 364, 91 P.3d 569. But our prior cases also have emphasized that "the scope of judicial review of an arbitration award is strictly limited to the statutory provisions governing arbitration." *Duchscher v. Vaile*, 269 Mont. 1, 4, 887 P.2d 181, 183 (1994); s*ee Paulson*, ¶ 24; *Terra W.*, ¶ 22. After a matter has been submitted to binding arbitration, district courts "are not permitted to review the merits of the controversy, but may only confirm, vacate, modify, or correct an arbitration award pursuant to §§ 27-5-311, -312, and -313, MCA." *Teamsters Union Local No. 2, Int'l Bhd. of Teamsters v. C.N.H. Acquisitions, Inc.*, 2009 MT 92, ¶ 14, 350 Mont. 18, 204 P.3d 733.

¶11 The U.S. Supreme Court has held that "courts of appeals should apply ordinary, not special, standards" when reviewing district court decisions on arbitration awards; a

5

decision on an arbitration award should be reviewed like "any other district court decision . . . accepting findings of fact that are not 'clearly erroneous' but deciding questions of law de novo." *First Options, Inc. v. Kaplan*, 514 U.S. 938, 947-48, 115 S. Ct. 1920, 1926 (1995). This is consistent with our ordinary standards of review governing a District Court's interpretation of a statute, and its application of controlling legal principles to findings of fact. *City of Missoula v. Iosefo*, 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180; *BNSF Ry. Co. v. Cringle*, 2012 MT 143, ¶ 16, 365 Mont. 304, 281 P.3d 203. In such cases, we review legal conclusions de novo. *Cringle*, ¶ 16. Further, our review is plenary to the extent that a discretionary ruling is based on a conclusion of law. *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 17, 351 Mont. 464, 215 P.3d 649. Because the District Court's decision in this case turns on whether it correctly applied the statutory provisions governing review of arbitration awards, we apply de novo review to the District Court's ruling.

**DISCUSSION**

¶12 The District Court held that the Arbitrator exceeded her powers by requiring progressive discipline and that the Arbitrator's decision to reinstate Tubaugh violated public policy. The court alternatively held that the arbitration award may be vacated "under Section 27-5-312(1)(b), MCA, for a manifest disregard of the law." There have been no allegations that would trigger that subsection of the statute, which requires "evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party[.]" Section 27-5-312(1)(b),

6

MCA; *see Geissler v. Sanem*, 285 Mont. 411, 417-18, 949 P.2d 234, 239 (1997). Accordingly, we proceed to examine the claims under § 27-5-312(1)(c), MCA, whether the Arbitrator exceeded her powers, and to determine whether the decision violates public policy.

¶13 *1. Whether the Arbitrator exceeded her powers by requiring progressive discipline pursuant to the Collective Bargaining Agreement.*

¶14 "Generally, Montana gives arbitrators broad authority and powers to determine all issues." *Paulson*, ¶ 22. "It is well-settled that a court's power to vacate an arbitration award must be extremely limited because an overly expansive judicial review of arbitration awards would undermine the litigation efficiencies which arbitration seeks to achieve." *Fine v. Bear, Stearns & Co.*, 765 F. Supp. 824, 827 (S.D.N.Y. 1991).

¶15 Upon the application of a party, the District Court "shall vacate [an arbitrator's] award if . . . the arbitrator[] exceeded [her] powers." Section 27-5-312(1)(c), MCA. We have held that an arbitrator exceeds her powers if she decides matters that were not submitted to her. *Terra W.*, ¶ 27; *see also Batten v. Howell*, 389 S.E.2d 170, 172 (S.C. Ct. App. 1990) ("The question of whether arbitrators have exceeded their powers relates to arbitrability of the issue they have attempted to resolve."). As long as an arbitrator's factual determination and legal conclusions derive their essence from the collective bargaining agreement itself and the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. *Sheet Metal Workers Int'l Asso., Local No. 359 v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988). "This remains so even if the basis for the arbitrator's decision is

7

ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions." *Sheet Metal Workers*, 863 F.2d at 653.

¶16    On the other hand, "[a]n arbitrator's authority is limited by the bounds of the [arbitration] agreement, and courts may vacate [arbitration] awards that extend beyond the contractual scope of arbitration." *Nelson v. Livingston Rebuild Ctr., Inc.*, 1999 MT 116, ¶ 15, 294 Mont. 408, 981 P.2d 1185 (citation omitted). "When a collective bargaining agreement prohibits the addition of contract terms, the arbitrator may not proceed to do so." *IBEW, Local 175 v. Thomas & Betts Corp.*, 182 F.3d 469, 472 (6th Cir. 1999). However, "[i]f the remedy fashioned by the arbitrator has been rationally derived from the [arbitration] agreement it will be upheld on review." *Nelson*, ¶ 19.

¶17    The parties presented the following issue to arbitration:

> Did the City of Livingston Police Department have cause under the terms of the collective bargaining agreement with the Montana Public Employees Association Livingston Police Unit for the discharge of Matthew Tubaugh, and if not, what is the appropriate remedy?

¶18    The Arbitrator determined that the City of Livingston's approach to dealing with Tubaugh's misconduct violated the CBA because the City failed to attempt to reform Tubaugh's behavior before requiring a fitness for duty examination and terminating him. The CBA states, "If discipline is warranted, it will be rendered in one of the following forms." The CBA then lists and explains the available "forms" of disciplinary action: verbal counseling, written reprimands, suspension, demotion, and termination. Although the express terms of the CBA do not provide for progressive discipline, the Arbitrator found that the CBA "is intended to be corrective and progressive" based on a widely-used

8

definition of "good cause." She noted that the July 1, 2012 CBA, adopted prior to Tubaugh's discharge, added a good cause standard to the requirement for discipline. The Arbitrator then used her interpretation of the "good cause" provision in the CBA to conclude that there was cause to discipline Tubaugh, but that the appropriate remedy was a three-month suspension, not termination.

¶19 The CBA does not specify that discipline will be rendered in any particular order. Rather, the CBA allows for any of the various disciplinary actions to be taken where determined by the City to be appropriate. Further, the Grievance Procedure set forth in the CBA expressly states that "[t]he Arbitrator shall have no authority to alter, amend or delete any Policy of the City, or provisions of this Agreement." The District Court determined that "[t]here is simply no provision in the CBA that requires moving through a series of disciplinary steps prior to a termination." The court observed that "the manner of discipline [instead] is elected from a range of possibilities . . . . This is not progressive discipline." The court then concluded that the Arbitrator exceeded her authority by imposing a progressive discipline requirement that altered the terms of the CBA that were negotiated by the parties.

¶20 An arbitrator exceeds her authority if she attempts to resolve an issue that is not arbitrable because it is outside the scope of the arbitration agreement, but she does not exceed her powers by making factual or legal errors. *Sheet Metal Workers*, 863 F.2d at 653. As long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of [her] authority, that a court is convinced [she] committed

9

serious error does not suffice to overturn [her] decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 371 (1987).

¶21   Here, the Arbitrator's reasoning involved her interpretation of the CBA's provisions for discipline and termination, matters properly within the scope of the issue presented by the parties for arbitration: whether there was cause for termination. Even if the Arbitrator's reasoning involved errors of fact and law, her award is limited to that issue. The District Court found error in the Arbitrator's interpretation of the CBA. A court may not overturn an arbitrator's decision, however, "simply because the court believes its own interpretation of the contract would be the better one." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 764, 103 S. Ct. 2177, 2182 (1983).

¶22   The District Court incorrectly determined that the Arbitrator exceeded her authority in her interpretation of the CBA. Although the District Court's interpretation was plausible, we cannot conclude that the Arbitrator's contrary award "does not draw its essence from the [CBA]." *W.R. Grace & Co.*, 461 U.S. at 766, 103 S. Ct. at 2183.

¶23   *2. Whether the Arbitrator violated public policy by requiring the City of Livingston to reinstate Tubaugh to his previous position or to one of comparable pay.*

¶24   "As with any contract, . . . a court may not enforce a collective-bargaining agreement that is contrary to public policy." *W.R. Grace*, 461 U.S. at 766, 103 S. Ct. at 2183. A court's refusal to enforce an arbitrator's interpretation of a contract on this ground is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well-defined and dominant." *Misco*, 484 U.S. at 43, 108

10

S. Ct. at 373. Such a public policy is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Misco*, 484 U.S. at 43, 108 S. Ct. at 373. We consider whether the arbitrator's award creates an "explicit conflict" with other laws and legal precedents. It is the arbitrator's interpretation of the contract that must be determined to violate a public policy. *See Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, etc.*, 886 F.2d 1200, 1209-12 (9th Cir. 1989).

¶25 Without referring to any specific laws or legal precedents, the District Court determined that the Arbitrator's decision violated the "well-defined public policy" of "the safety of fellow-officers and the safety of the general public." The court reasoned that the reports of Tubaugh's conduct were "very troubling," and that the "record reflects [the] factual determination that Tubaugh was not fit for duty." The City supports the court's ruling by noting that police officers hold positions of public trust, citing to several statutes, not controlling here, involving the general duties of police officers and mistreatment of prisoners.

¶26 The U.S. Supreme Court has been careful to avoid creating a "broad judicial power to set aside arbitration awards as against public policy." *Misco*, 484 U.S. at 43, 108 S. Ct. at 373. "[A] formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective-bargaining agreement." *Misco*, 484 U.S. at 44, 108 S. Ct. at 374. "If a court relies on public policy

11

to vacate an arbitral award reinstating an employee, it must be a policy that bars *reinstatement*." *Stead Motors*, 886 F.2d at 1212 (emphasis in original). "Courts cannot determine merely that there is a 'public policy' against a particular sort of behavior in society generally and, irrespective of the findings of the arbitrator, conclude that reinstatement of an individual who engaged in that sort of conduct in the past would violate that policy." *Stead Motors*, 886 F.2d at 1212; *see also Westvaco Corp. v. United Paperworkers Int'l Union ex rel. Local Union 676*, 171 F.3d 971, 976-78 (4th Cir. 1999) (rejecting the argument that an arbitrator's reinstatement of an employee violated public policy by hindering a corporation's ability to remedy sexual harassment in the workplace).

¶27 The Arbitrator decided, based on her finding that "the degree of discipline accorded was not reasonably related to the seriousness of Tubaugh's offense and his past record," that the City did not have cause under the terms of the CBA for Tubaugh's discharge, and that the appropriate remedy was a three-month suspension. The District Court, noting the importance of officer and public safety, found support in the record for the City's conclusion that Tubaugh's unfitness "was based upon his episodes of inappropriate anger and aggressive behavior that the [fitness for duty evaluation] concluded was not going to change." Because a police department has an undisputed duty to protect the public, the court concluded that the Arbitrator's award violated public policy.

12

¶28 "Courts are strictly barred from engaging in fact-finding when they review labor arbitration awards." *Stead Motors*, 886 F.2d at 1217. The District Court's decision to vacate the award for violating public policy impermissibly substituted the Arbitrator's factual determinations with its own and relied on only a generalized "'public policy' against a particular sort of behavior." *Stead Motors*, 886 F.2d at 1212. The District Court erred in holding that the Arbitrator violated public policy by requiring the City of Livingston to reinstate Tubaugh to his previous position or to one of comparable pay.

¶29 *3. Whether the District Court erred when it vacated the Award on the grounds that the Award prevented the City of Livingston from requiring fitness for duty examinations.*

¶30 The Arbitrator expressed concern with the fitness for duty examination in this case, stating, "This use of the fitness for duty examination as a substitute for the corrective and progressive discipline contemplated by the collective bargaining agreement is troubling." She noted that the examination was not mandated by the CBA, city policy, or state law. She further determined that, "[a]part from the procedural issues relating to this fitness for duty examination, the resulting report prepared by Watson is itself troubling." She observed that Watson's sole interview with Tubaugh took place in a public venue, that Watson relied on statements from people who were not identified in the report, and that Tubaugh never had the opportunity to rebut or challenge the bases for Watson's conclusions. The Arbitrator did not hold that the City could not require its officers to complete a fitness for duty examination; instead, she held that the fitness for duty examination here was not credible or reliable because of the manner in which it was conducted.

13

¶31     The District Court disagreed with the Arbitrator's assessment of the fitness for duty evaluation.  After concluding that the CBA permitted the City of Livingston to order the examination, the court noted that Dr. Watson's qualifications were not questioned during the Arbitration hearing, and that Raney gave Tubaugh an opportunity to provide additional information after the examination.  The court held that "the Arbitrator's Award effectively deleted the broad management rights reserved to Chief Raney under the very terms of the CBA, by determining that he did not have the right to require the [fitness for duty examination] of Tubaugh."

¶32     "Judicial review of arbitration is profoundly more limited than judicial review of a verdict of a jury or trial court."  21 Samuel Williston, Richard A. Lord, *Williston on Contracts* § 57:129, 629-30 (4th ed. 2001).  Arbitrators have the power to review issues of both fact and law.  *Paulson*, ¶ 23.  The District Court may not re-weigh the evidence in the case or reinterpret the reliability of evidence presented for the Arbitrator's consideration.  *See Stockade Enters. v. Ahl*, 273 Mont. 520, 524, 905 P.2d 156, 158 (1995).  The Arbitrator's award did not alter existing management rights, including any right to require fitness for duty examinations of officers.  Instead, the Arbitrator determined that the fitness for duty examination was the improper approach in this circumstance and that the examination itself was not credible.

¶33     Judicial review of the Arbitrator's award is limited to the determination whether there is any statutory ground for vacatur and whether the arbitrator acted within the scope of her authority.  Williston, at § 57:129, 630. The Arbitrator's authority to weigh

14

evidence clearly allowed her to determine the credibility of the fitness for duty examination. The District Court should not have reached the issue whether the City of Livingston may require police officers to submit to fitness for duty examinations, and we make no ruling on that point here. The District Court erred by determining that the Arbitrator's Award should be vacated because of its findings related to the fitness for duty examination.

¶34    *4. Whether the Arbitrator exceeded her powers by ordering the City of Livingston to expunge the fitness for duty examination from Officer Tubaugh's personnel file.*

¶35    The District Court held that the Arbitrator exceeded her authority in ordering the City of Livingston to expunge Tubaugh's fitness for duty examination from his personnel file. The District Court determined that the examination should remain in the file because it was admitted as evidence in the arbitration proceedings, and it "was already addressed in newspaper reporting of the hearing." The City of Livingston supports the District Court's decision with references to the Right to Know provision of the Montana Constitution (Art. II, section 9) and to "public record laws," without specific citations.

¶36    Here, however, the issue is not whether the public has a right to know, but whether the Arbitrator had the authority to remove the examination from Tubaugh's personnel file after she determined that the examination was not credible. Because of the voluntary, informal nature of arbitration, "[t]he reviewing court must observe the principle that arbitrators are free to fashion forms of relief which could not be ordered by a court in law or equity." *JBC of Wyoming Corp. v. Cheyenne*, 843 P.2d 1190, 1194 (Wyo. 1992); § 27-5-312(2), MCA. Absent a clause specifically limiting the authority to grant a

particular type of relief, it is implied by submitting to arbitration that the arbitrator has the power to order an appropriate remedy. *Williston*, at § 57:111, 575-76. "[W]ith regard to a proper remedy, the arbitrator should be given latitude and flexibility." *Danville Educ. Ass'n. v. Danville Area School Dist.*, 467 A.2d 644, 646 (Pa. Commw. Ct. 1983) (citing *United Steel Workers v. Enter. Wheel and Car Corp.*, 363 U.S. 593 (1960)).

¶37 The Arbitrator did not order that the examination be destroyed. She merely ordered it removed from Tubaugh's personnel file to prevent it from being used for disciplinary purposes in the future. Similar to her determination regarding the examination's credibility, this decision was within the scope of the issues the parties agreed to submit to arbitration—Tubaugh's grievance over the City's decision to discipline him and whether termination was the appropriate remedy. Removal from the personnel file of an examination report that the Arbitrator determined should not have been the basis for discharge was a form of relief within the Arbitrator's broad powers under the CBA. The District Court erred when it held that the Arbitrator exceeded her authority by directing removal of the examination from Tubaugh's personnel file.

## CONCLUSION

¶38 We reverse the decision of the District Court and remand with instructions for the court to enter judgment confirming the arbitration award.

/S/ BETH BAKER

16

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE

Justice Laurie McKinnon, concurring.

¶39    I concur with the Court's decision to reverse the order of the District Court and remand with instructions to confirm the arbitration award in this case.  I believe our analysis would benefit, however, from more thorough consideration of the principles underlying judicial review of arbitration awards.  I therefore write separately to address two issues: the standard of review and the limited public policy exception to enforcement of arbitration awards.

¶40    First, our prior decisions have not clearly distinguished between the standards of review to be employed by a district court reviewing an arbitrator's award and those to be employed by an appellate court reviewing a district court's decision to vacate or confirm an award.  Further, our review of a district court's decision to vacate or confirm an award has been inconsistent, and we have applied an incorrect abuse of discretion standard.

¶41    I begin with a discussion of the role of an arbitrator in interpreting a collective bargaining agreement.  A collective bargaining agreement is "more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S. Ct. 1347, 1351 (1960).  To address these unanticipated circumstances and "fill

17

in the gaps," the parties agree to choose an arbitrator as their "'officially designated "reader" of the contract,'" who will provide "the means through which they agree 'to handle the anticipated unanticipated omissions of the [collective bargaining agreement].'" *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, etc.*, 886 F.2d 1200, 1205 (9th Cir. 1989) (quoting Theodore J. St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and Its Progeny*, 75 Mich. L. Rev. 1137, 1140 (1977)). When an arbitrator interprets the collective bargaining agreement, "'he is speaking for the parties, and his award *is* their contract.'" *Stead Motors*, 886 F.2d at 1205 (quoting St. Antoine, *supra* at 1140). The arbitration award is an expression of the will of the parties, and is therefore afforded a "nearly unparalleled degree of deference." *Stead Motors*, 886 F.2d at 1205. As long as an arbitrator's award is based on his or her interpretation of the contract, a court may not disturb the award even if it believes the arbitrator's interpretation of the contract to be factually or legally in error. *Terra W. Townhomes, L.L.C. v. Stu Henkel Realty*, 2000 MT 43, ¶ 37, 298 Mont. 344, 996 P.2d 866; *Nelson v. Livingston Rebuild Ctr., Inc.*, 1999 MT 116, ¶ 18, 294 Mont. 408, 981 P.2d 1185 (citing *United Paperworkers Intl. Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 370-71 (1987)).

¶42    Thus, because it is the arbitrator's construction of the contract that was bargained for and it is the arbitrator who will state the parties' bargain and fill in the gaps, the district court may not overrule the arbitrator simply because its interpretation of the contract is different from the arbitrator's. *United Steelworkers of Am. v. Enterprise*

18

*Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S. Ct. 1358, 1362 (1960). Deference to the arbitrator's construction of the contract is premised on the principle that courts are not free to relieve a party of his obligations under a contract merely because those obligations have turned sour for him. *Stead Motors*, 886 F.2d at 1206. This is the conceptual underpinning for judicial deference to an arbitrator's award.

¶43 In accordance with the policy of deference to the decision of an arbitrator, a district court's review of an arbitration award is extremely narrow. Opinion, ¶ 14; *Geissler v. Sanem*, 285 Mont. 411, 414-15, 949 P.2d 234, 237 (1997). Under our statutes, a district court "shall vacate" an arbitrator's award if:

> (a) the award was procured by corruption, fraud, or other undue means;

> (b) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

> (c) the arbitrators exceeded their powers;

> (d) the arbitrators refused to postpone the hearing upon sufficient cause being shown or refused to hear evidence material to the controversy or otherwise conducted the hearing . . . in a manner that substantially prejudiced the rights of a party;

> (e) there was no arbitration agreement and the issue was not adversely determined . . . and the party did not participate in the arbitration hearing without raising the objection; or

> (f) a neutral arbitrator failed to make a material disclosure . . . .

Section 27-5-312(1), MCA. If there are no grounds presented for vacating, modifying, or correcting the award, the district court "shall confirm" the award. Section 27-5-311, MCA. The use of "shall" in our statutes is commonly understood to be mandatory.

19

*Gaustad v. City of Columbus*, 265 Mont. 379, 381-82, 877 P.2d 470, 471 (1994). A district court is afforded no discretion in its decision to confirm or vacate the award of an arbitrator. *See* §§ 27-5-311, -312, MCA.

¶44    Sections 27-5-311 and -312, MCA, provide the standard of review upon which a "district court" may vacate or confirm an award. If a party applies to the district court to vacate an award for any of the reasons enumerated in § 27-5-312(1)(a)-(f), MCA, and the district court is satisfied that sufficient facts have been presented substantiating one of these subsections, then the district court "shall" vacate the award of the arbitrator. Nevertheless, in determining whether the "arbitrators exceeded their powers," for example, the district court is still bound by the rule of deference to the arbitrator's decision and may not substitute its legal conclusions and factual findings, even if the arbitrator's are clearly erroneous. Because the parties have contracted to have disputes settled by their chosen arbitrator rather than by a judge, it is the arbitrator's view of the facts and interpretation of the collective bargaining agreement that they have agreed to accept. *Misco*, 484 U.S. at 37-38, 108 S. Ct. at 370. "Courts thus do not sit to hear claims of factual and legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco*, 484 U.S. at 38, 108 S. Ct. at 370.

¶45    I turn next to the standard of review an appellate court should apply when reviewing a district court's decision to vacate or confirm an arbitration award. The policy of deference to the decision of an arbitrator has led some courts to adopt a similar policy of deference to a trial court's decision to confirm an arbitration award. *See, e.g.*,

20

*Robbins v. Day*, 954 F.2d 679, 682 (11th Cir. 1992), *overruled in part by First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948, 115 S. Ct. 1920, 1926 (1995).  The Eleventh Circuit, for example, adopted an abuse of discretion standard when reviewing a district court's decision to confirm an award, but a de novo standard when reviewing a district court's decision to vacate an award, reasoning as follows:

> By reversing a district court's denial of a motion to vacate an arbitration award only upon abuse of discretion, we further the presumption that the arbitration proceeding was proper.  Similarly, when a district court goes against the presumption that it should affirm an arbitration award, we must review de novo to protect the integrity of the arbitration process.

> By broadly reviewing the grant of a motion to vacate an arbitration award, while narrowly reviewing confirmation of an award, we emphasize the unique context of arbitration, which requires deferential review to promote the primary advantages of arbitration—speed and finality.  De novo review of the granting of a motion to vacate enables us to assess whether the district court accorded sufficient deference in the first instance, an assessment that a more restrictive appellate review would frustrate.

*Robbins*, 954 F.2d at 682.

¶46   Similar reasoning may have influenced our adoption of the abuse of discretion standard in *Duchscher v. Vaile*, 269 Mont. 1, 5, 887 P.2d 181, 184 (1994), where we took the standard—without discussion—from an Arizona decision that followed a policy of deference to the trial court.  *See Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 868 P.2d 1014, 1021 (Ariz. Ct. App. 1993) (citing *Park Imperial, Inc. v. E.L. Farmer Constr. Co.*, 454 P.2d 181, 183-84 (Ariz. Ct. App. 1969) ("This Court on appeal is bound to view the action of the trial court in a light most favorable to upholding the trial court's determination, just as the trial court was required to view the arbitration award in a light

21

most favorable to upholding the said award . . . ." (citations omitted))), *vacated*, 882 P.2d 1274 (Ariz. 1994). It appears that we have applied this standard only when reviewing a district court's refusal to vacate an arbitration award. *See, e.g.*, *Teamsters Union Local No. 2, Intl. Bhd. of Teamsters v. C.N.H. Acquisitions, Inc.*, 2009 MT 92, ¶ 14, 350 Mont. 18, 204 P.3d 73; *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 18, 321 Mont. 364, 91 P.3d 569; *Terra W.*, ¶ 31.

¶47 The notion that different standards of review should be applied depending on the outcome in the lower court was ultimately rejected by the United States Supreme Court, which held that "courts of appeals should apply ordinary, not special, standards when reviewing district court decisions upholding arbitration awards," and explicitly counseled against adoption of a standard of review "more likely [to] produce a particular substantive result." *First Options*, 514 U.S. at 948, 115 S. Ct. at 1926. The Supreme Court concluded that although "courts grant arbitrators considerable leeway when reviewing most arbitration decisions . . . that fact does not mean that appellate courts should give *extra* leeway to district courts that uphold arbitrators." *First Options*, 514 U.S. at 948, 115 S. Ct. at 1926. Thus, review of a district court decision to vacate or confirm an arbitration award "should proceed like review of any other district court decision . . . accepting findings of fact that are not 'clearly erroneous' but deciding questions of law de novo." *First Options*, 514 U.S. at 947-48, 115 S. Ct. at 1926.

¶48 The Court adopts *First Options* in part, noting that we should not apply "special" standards of review, and correctly applies de novo review to the District Court's

22

conclusions of law in the present case. Opinion, ¶ 11. The Court does not explicitly reject the abuse of discretion standard we have applied in other cases, however, and thus we appear to be left in the circumstance specifically condemned by *First Options*—applying an abuse of discretion standard in some cases, and de novo review in others. The Court does not dispel the confusion surrounding our standards of review, and I believe may increase it. I would clarify our case law to establish that when reviewing a district court's decision to confirm or vacate an arbitration award, application of an abuse of discretion standard is inappropriate. Instead, we review the district court's conclusions of law de novo, and any necessary findings of fact for clear error.

¶49     It is important to be clear that the only findings of fact a district court may make relate to one of the enumerated subsections of § 27-5-312(1), MCA. Moreover, as is clear from the language of § 27-5-312(1)(a)-(f), MCA, any factual findings made by the district court necessarily would be collateral to the underlying arbitration proceedings and would not relate in any way to the merits of the arbitration award. For example, if it were alleged that the award should be vacated because procured by corruption, fraud, or undue means, § 27-5-312(1)(a), MCA, the district court would make factual findings regarding these specific allegations which would be reviewed by this Court for clear error.

¶50     In summary, because this case involves review of both an arbitrator's decision and the decision of the district court, two standards of review are applicable. Sections 27-5-311 and -312, MCA, clearly provide the standard to review the arbitrator's decision. Scrutiny of the award by the district court is extremely limited. If the award, on its face,

represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. *George Day Constr. Co. v. United Bhd. of Carpenters and Joiners, Local 354*, 722 F.2d 1471, 1477 (9th Cir. 1984). This remains so even if the basis of the arbitrator's decision contains erroneous factual findings and legal conclusions. *George Day Constr. Co.*, 722 F.2d at 1477; *Am. Postal Workers v. U.S. Postal Serv.*, 682 F.2d 1280, 1284 (9th Cir. 1982). As long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38, 108 S. Ct. at 371. Finally, when reviewing a district court's decision to either confirm or vacate an arbitration award, we should review factual findings regarding one of the enumerated subsections for clear error and legal conclusions for correctness.

¶51 While courts generally must defer to an arbitrator's interpretation of a contract, a limited exception exists where that interpretation is directly contrary to public policy, and therefore unenforceable. *W.R. Grace & Co. v. Local Union 759, Intl. Union of United Rubber*, 461 U.S. 757, 766, 103 S. Ct. 2177, 2183 (1983). An arbitrator's award is the contract of the parties, and thus, like any contract, it may not be enforced if it violates an explicit public policy. *W.R. Grace*, 461 U.S. at 766, 103 S. Ct. at 2183. The Court correctly observes that this exception only applies where the arbitrator's award violates a specific law or legal precedent. Opinion, ¶ 24. A court may not refuse to enforce an arbitrator's award simply because the court believes the award does not generally serve

24

the public interest. *Misco*, 484 U.S. at 43, 108 S. Ct. at 373. Where an arbitrator has awarded reinstatement of an employee, a court may not decline to enforce the award on the grounds that the employee's underlying conduct violated public policy or was not in the public interest. *Stead Motors*, 886 F.2d at 1212. Instead, the court must find that a specific law or legal precedent explicitly prohibits reinstatement of the employee. *Stead Motors*, 886 F.2d at 1212-13.

¶52    In this case, the District Court found that "the ordering of Tubaugh's reinstatement violates public policy. The public policy in this case is the fitness for duty of police officers and the corresponding safety of other officers and the general public." I do not wish to diminish these concerns, and indeed I am gravely concerned by Tubaugh's conduct. Nevertheless, neither the District Court nor the City point to any specific law or precedent which bars the continued employment of an officer in Tubaugh's position. Section 45-5-204, MCA, states that a person convicted of the offense of mistreating prisoners must be removed from employment, but Tubaugh has not been convicted of that offense. No law would have prevented the City from continuing to employ Tubaugh had it wished to do so; indeed, the arbitrator found that Police Chief Darren Raney "was quite clear in the hearing that his objective was to retain Tubaugh," until he received the results of the fitness for duty examination.

¶53    While the fitness for duty of police officers is of significant public concern, no law or legal precedent prohibits the continued employment of an officer based solely on a questionable fitness evaluation. There is instead a well-defined administrative process

25

for revoking the credentials of an officer who is determined to be unfit for duty. A member of a city police department must meet minimum qualifying standards promulgated by the Montana Public Safety Officer Standards and Training Council. Section 7-32-4112, MCA. A person whose certification as a police officer has been revoked or suspended by that Council may not act as a police officer. Section 7-32-303(8), MCA. The Council considers complaints against public safety officers, and may revoke an officer's certification based on "a physical or mental condition that substantially limits the person's ability to perform the essential duties of a public safety officer, or poses a direct threat to the health and safety of the public or fellow officers," among other grounds. Admin. R. M. 23.13.702(2)(b).

¶54 Had a complaint been filed with the Council, and Tubaugh's certification revoked based on the finding that he was not fit for duty due to or other aspects of his conduct, his continued employment would then violate an explicit, well-defined public policy, and the court could not enforce an award ordering his reinstatement. *See Misco*, 484 U.S. at 43, 108 S. Ct. at 373. On the record before us, it appears that those steps were not taken, and that Tubaugh remained certified as a police officer.

¶55 Because Tubaugh was not convicted of mistreating prisoners, and because his certification as a police officer was not revoked by the Montana Public Safety Officer Standards and Training Council, his reinstatement as a police officer did not violate the explicit public policies defined by §§ 45-5-204 and 7-32-303(8), MCA. Although Tubaugh's conduct may offend general considerations of public interests, the arbitrator's

26

decision to order his reinstatement was not illegal. The public policy exception to enforcement of arbitration awards is narrow, *Stead Motors*, 886 F.2d at 1210, and its requirements were not met in this case. I therefore concur with the Court's conclusion that the District Court erred when it found that the award violated public policy. Opinion, ¶ 28. However, I believe the District Court's error was in failing to correctly identify an explicit public policy that was violated by Tubaugh's reinstatement. The Court's statement that the District Court "impermissibly substituted the Arbitrator's factual determinations with its own" seems out of place in this analysis. Opinion, ¶ 28.

¶56 I agree that the arbitrator's award was based on her interpretation of the collective bargaining agreement and did not violate an explicit and well-defined public policy. I further agree that the arbitrator had authority to determine the credibility of the fitness for duty evaluation, and in deference to the broad latitude afforded the arbitrator under the collective bargaining agreement, I agree that she was authorized to fashion a remedy that included removal of the fitness for duty examination from Tubaugh's personnel file. Although I believe the Court should go further in its discussion of the standard of review applicable in this case, I concur in the decision to reverse the order of the District Court and remand with instructions to confirm the arbitrator's award.

¶57 I concur.


/S/ LAURIE McKINNON

27